IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RICHARD GLENN, | * | |
| Plaintiff, | * | Civil Action No. RDB-14-802 |
| v. | * | |
| CSX TRANSPORTATION, INC. | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Richard Glenn ("Plaintiff"), a Maryland resident, brings this action against Defendant CSX Transportation, Inc. ("Defendant") due to injuries he sustained while attempting to pass between the cars of a train located on Defendant's railroad tracks in Baltimore, Maryland. The train, which was stationary at the time Plaintiff tried to pass through it, began to move and caused significant injury to the Plaintiff when the train's wheel ran over his right foot. Plaintiff is suing Defendant for compensatory and punitive damages, alleging that Defendant engaged in willful and wanton, negligent, and abnormally dangerous conduct. Defendant filed a Motion to Dismiss Plaintiff's Complaint (ECF No. 7). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 7) is GRANTED.

BACKGROUND

In ruling on a motion to dismiss, the factual allegations in a plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

On February 22, 2012, Plaintiff attempted to cross the Defendant's railroad tracks, which are adjacent to the 600 block of West Patapsco Avenue in Baltimore, Maryland. Compl. ¶¶ 3, 4, 32. Defendant had an easement to use the property, and the particular location is frequently used by pedestrians to cross the railroad tracks. *Id.* ¶¶ 2, 6. The frequent foot traffic at this particular location caused a footway path to be engraved in the dirt and grass leading from the residential area to the railroad tracks. *Id.* ¶ 6. The Plaintiff had just finished cutting lawns on the Patapsco Avenue side of the tracks when he attempted to cross the railroad tracks with his weed whacker to go home. *Id.* ¶¶ 26, 27. As the Plaintiff approached the tracks, there was a stationary train with multiple railroad cars. *Id.* ¶ 28. The train was long enough that Plaintiff could not see the beginning or the end of the train. *Id.* ¶ 29. In attempting to cross the tracks, Plaintiff put his weed whacker on the coupler of a railroad car and began to climb over the car. *Id.* ¶ 32. Without any warning, the train began to move, which caused Plaintiff to fall to the tracks. *Id.* ¶ 35. While the Plaintiff was on the tracks, the train's wheel ran over his right foot, severing Plaintiff's toes, and eventually leading to the amputation of Plaintiff's leg. *Id.* ¶ 23, 35.

Based on the incident and Plaintiff's accompanying injury, Plaintiff filed suit in the Circuit Court for Baltimore City, seeking both compensatory and punitive damages for Defendant's allegedly willful and wanton, negligent, and abnormally dangerous conduct. *See*

compl., ECF No. 2. On March 14, 2014, the case was removed to this Court on the basis of diversity of citizenship under 28 U.S.C. § 1332.[1] Currently pending is Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 7) for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant argues that Plaintiff's claim for wanton conduct (Count I) should be dismissed because Plaintiff alleges facts that amount to mere inaction rather than willful or wanton conduct. Second, Defendant states that Plaintiff's common law negligence claim (Count II) should be dismissed because Plaintiff was a trespasser, and thus, Defendant had no obligation to refrain from engaging in negligent conduct. Third, Defendant argues that Plaintiff's claim that the operation of a railroad is an "abnormally dangerous activity" (Count III) should be dismissed because Plaintiff fails to address the relevant factors contained in § 520 of the Restatement (Second) of Torts. For the reasons that follow, Defendant's Motion to Dismiss (ECF No. 7) is GRANTED.

STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test

---

[1] The Plaintiff filed a Response to the Standing Order Concerning Removal (ECF No. 8), which argues that the Defendant's bare assertion that its principal place of business is in Jacksonville, Florida is insufficient to establish diversity jurisdiction. However, in *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008), the United States Court of Appeals for the Fourth Circuit held that a party attempting to establish diversity jurisdiction in a notice of removal need only allege that the parties are diverse and that the amount in controversy exceeds the amount specified in 28 U.S.C. § 1332. Here, the notice of removal establishes that Plaintiff is a citizen of Maryland, and Defendant is a Virginia corporation with its principal place of business in Jacksonville, Florida. *See* Notice of Removal, ECF No. 1. Accordingly, the pleadings establish complete diversity among the parties, as required under section 1332. Additionally, Plaintiff seeks $2.5 million in compensatory damages and $20 million in punitive damages, and thus the amount in controversy exceeds $75,000. *See* Compl. For these reasons, this Court has diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1332.

the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, this Court "need not accept the legal conclusions drawn from the facts, and [this Court] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet v. Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Id.* at 679. Under the plausibility standard, a complaint must contain "more than

labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Although the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)). In short, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 664.

## ANALYSIS

CSX Transportation, Inc. moves to dismiss all of the counts alleged in Plaintiff's complaint. Where, as here, this Court has jurisdiction based on diversity of citizenship, the substantive law of the forum state applies. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State."). Thus, this Court will apply the substantive law of Maryland, first addressing the negligence count (Count II), and then turning to the counts for willful and wanton conduct (Count I) and strict liability under the "abnormally dangerous activity" doctrine (Count III). As explained below, this Court holds that all three counts should be dismissed for failure to state a claim.

I. **Defendant's Motion to Dismiss the Plaintiff's Claim of Negligence**

Plaintiff alleges that Defendant breached its duty to the Plaintiff by negligently injuring him. Compl. ¶¶ 32–36. The crux of Plaintiff's argument is that (1) the Defendant was negligent by not having any footbridge, signs, watchmen, or other personnel to monitor whether anyone was in a vulnerable location at the time the train started moving, and (2) the Defendant did not issue a warning before beginning to move the train. *Id.* ¶ 34. The Defendant argues that it owed no duty to Plaintiff to refrain from acting negligently because Plaintiff was a trespasser at the time of the incident. Def's. Mot. to Dismiss, ECF No. 7.

In *Sherman v. Suburban Trust Co.*, 384 A.2d 76, 79 (Md. 1978) (citation omitted), the Maryland Court of Appeals stated that "the liability of a property owner to an individual injured on his property is dependent … upon a determination of the individual's status while on the property, i. e., whether he is an invitee, licensee, or trespasser." Thus, the duty the Defendant owes to the Plaintiff in this case is contingent on which classification applies to Plaintiff.

As an initial matter, Plaintiff cannot be categorized as a licensee. There are two types of licensees: a licensee by invitation and a bare licensee. *Wagner v. Doehring*, 553 A.2d 684, 686–87 (Md. 1989) (citation omitted). A licensee by invitation is "a social guest and is owed a duty of reasonable care." *Id.* at 686. "A bare licensee is one who enters upon property, not as a social guest, but for his or her own convenience or purpose and with the landowner's consent." *Id.* at 686–87. Here, Plaintiff does not allege any facts to show that he was a social guest and accordingly cannot be characterized as a licensee by invitation. The Plaintiff also does not qualify as a bare licensee because he does not allege any facts to show

that Defendant ever gave its consent to allow him to cross the tracks. Accordingly, Plaintiff is not a licensee.

Plaintiff has also not alleged any facts to show he is an invitee. An invitee is "defined as one permitted to remain on the premises for purposes related to the owner's business." *Id.* at 686 (citation omitted). In the instant case, Plaintiff alleges that he attempted to cross the railroad tracks in order to go home. Compl. ¶ 27. Therefore, Plaintiff was not on the premises for a purpose related to the Defendant's business and cannot be considered an invitee. In his reply, Plaintiff contends that he is an invitee under the doctrine of implied invitation.[2] Pl's. Resp. to Mot. to Dismiss, ECF No. 12. To support this proposition, Plaintiff states that Defendant customarily allowed pedestrians to enter the property and that the train was designed in a manner so as to encourage the public to climb through the stationary cars. Pl's. Resp. to Mot. to Dismiss, ECF No. 12.

The case of *Crown Cork & Seal Co. v. Kane*, 131 A.2d 470, 474 (Md. 1957) (internal quotation marks and citations omitted) explains the theory of implied invitation:

> The gist of the liability consists in the fact that the person injured did not act merely on motives of his own, to which no act or sign of the owner or occupier contributed, but that he entered the premises because he was led by the acts or conduct of the owner or occupier to believe that the premises were intended to be used in the manner in which he used them, and that such use was not only acquiesced in, but was in accordance with the intention or design for which the way or place was adapted and prepared or allowed to be used

Thus, Plaintiff needs to allege facts that not only show that crossing the tracks was acquiesced to, but also that it was in accordance with the intention or design of the tracks to

---

[2] Plaintiff does not argue that he was an invitee by mutual benefit, which analyzes the subjective intent of the Plaintiff to determine whether he intended to benefit the land owner in some manner. *See Wells v. Polland*, 708 A.2d 34, 40 (Md. Ct. Spec. App. 1998). Even if this Court were to address this issue, it is clear that Plaintiff has not alleged any facts to show that he intended to benefit the Defendant in any way by crossing the tracks.

7

allow pedestrians to cross over the tracks.  Although Plaintiff alleges that there was a footway path leading from the residential area to the railroad tracks and that pedestrians regularly did cross the tracks, Plaintiff does not allege facts sufficient to show that anything in the design of the tracks or the train allowed him to cross over it.

Moreover, the Maryland Court of Appeals has rejected the argument that a footpath in close proximity to railroad tracks is sufficient to make one an invitee.  In *Jackson v. Pennsylvania R.R. Co.*, 3 A.2d 719 (Md. 1939), the plaintiff was injured while walking on the railroad tracks of the defendant.  *Id.* at 720.  The plaintiff alleged that there was a well-worn footpath by which pedestrians habitually crossed over the tracks.  *Id.* at 720–21.  The plaintiff alleged that the railroad company was negligent for their failure to warn the plaintiff that the train was moving, and he suffered injuries as a result.  *Id.* at 721.  The court held that the plaintiff "was a trespasser or at most a bare licensee.[3]"  *Id.* at 723.  The court reasoned that the plaintiff "did not go upon the defendant's right of way by an express nor implied invitation."  *Id.*  Accordingly, the railroad was under no duty to stop or reduce its speed unless it saw that there was danger of a collision.  *Id.* at 724.

The facts in *Jackson* are substantially similar to the case-at hand. Like the plaintiff in *Jackson*, Mr. Glenn alleges that there was a well-worn footpath, the railroad failed to take steps to warn him, and consequently, the railroad is liable for negligence.  However, just as the Plaintiff in *Jackson* did not have an implied invitation to cross the tracks because other pedestrians customarily crossed the tracks, Mr. Glenn was not an invitee merely because

---

[3] This Court explains earlier in the opinion that Plaintiff does not qualify as a bare licensee.  However, even if Plaintiff qualified as a bare licensee, the Defendant would still not have an obligation to refrain from acting negligently.  *See Sherman*, 384 A.2d at 79 (stating that owner owes no duty to licensee except to abstain from willful or wanton misconduct or entrapment).

8

other pedestrians crossed over the Defendant's railroad tracks. Consequently, Defendant owed no duty to Plaintiff to reduce its speed or stop unless it actually saw the Plaintiff on the tracks.

Thus, it is clear that Plaintiff should be categorized as a trespasser. A trespasser "is one who intentionally and without consent or privilege enters another's property." *Wagner*, 553 A.2d at 687. Here, Plaintiff entered Defendant's property and did so with the intent of returning home. *See* Compl. ¶¶ 26–27. Moreover, Plaintiff does not contend that Defendant gave him consent to cross over the tracks. Thus, Plaintiff is a trespasser, and Defendant only owed a duty to refrain from willful or wanton misconduct. *Deboy v. City of Crisfield*, 893 A.2d 1189, 1193 (Md. 2006). Accordingly, Defendant owed no duty to the Plaintiff to refrain from acting negligently, and Defendant's Motion to Dismiss with respect to Count II is GRANTED.

## II. Defendant's Motion to Dismiss Plaintiff's Claim of Willful and Wanton Conduct

In Count I, Plaintiff alleges that Defendant engaged in willful and wanton conduct. To support this claim, Plaintiff alleges that Defendant acted in a wanton manner by:

> not having any signage at or near the place of the accident warning members of the public, whom the Defendant knew for a long period of time did cross (and Defendant allowed to cross) their right of way; by not erecting a foot bridge or requesting the City of Baltimore to erect one over their right-of-way at or near where members of the public would cross, to the knowledge of the Defendant, to allow safe passage over their railroad right-of-way; by not having adequate watchmen to see if anyone might be injured if the train started; by allowing long lines of cars to stop where they knew members of the public would cross said blocked railroad tracks; by not having any other devices, cameras, etc. to see if anyone was on, between or under the cars before they started; by having said train of cars start without warning, knowing

>this movement might cause any said member of the public to fall from their train…and incur severe injury or death.

Defendant, in its motion to dismiss, argues that these facts, even if true, do not rise to wanton or willful conduct. Def's. Mot. Dismiss, ECF No. 7.

An owner of land has a duty to a trespasser to abstain from engaging in willful or wanton misconduct. *Hensley v. Henkels & McCoy, Inc.*, 265 A.2d 897, 898 (Md. 1970) (citations omitted). Willful conduct is distinguishable from wanton conduct. Willful conduct is "performed with the actor's actual knowledge or with what the law deems the equivalent of actual knowledge of the peril to be apprehended, coupled with a conscious failure to avert injury." *Doehring v. Wagner*, 526 A.2d 762, 767 (Md. 1989). On the other hand, a wanton act "is performed with reckless indifference to its potentially injurious consequences." *Id.* (citations omitted). Here, Plaintiff has failed to allege any facts to show that Defendant's conduct can be considered either willful or wanton.

In order to rise to the level of willful or wanton conduct, the conduct must be deliberate or reasonably expected to lead to injury. In *Doehring*, 526 A.2d at 764, the appellees erected a chain between two posts in order to prevent motorcyclists from using their driveway because motorcyclists had routinely used the driveway in the past. Appellant's son, driving his motorcycle, crashed into the chain at a fast speed and, as a result, suffered fatal injuries. *Id.* at 765. An investigator and a neighbor stated that there were no warning signs erected on the property. *Id.* The court held that the appellees' conduct was not willful or wanton. *Id.* at 768. The court reasoned that in order to be willful or wanton, the conduct needs to be "of a more deliberate nature" or "reasonably expected to lead to a desired result." *Id.* at 767 (citations omitted). The court further explained that "[t]he sole

fact that the chain was erected is not evidence that the [appellees] intended to injure the decedent or to cause his death. *Id.* at 768.

Here, construing the facts and inferences in a light most favorable to the Plaintiff, it is clear that the Defendant's conduct cannot be considered wanton or willful. Just as the appellees in *Doehring* knew that motorcyclists had previously used their driveway, CSX Transportation, Inc. could have anticipated that pedestrians would cross its railroad tracks. Additionally, like the appellees in *Doehring*, CSX Transportation, Inc. provided no warnings that the train would start moving. Yet, just as the appellants in *Doehring* failed to show that the appellees took "deliberate" action or action "reasonably expected to lead to a desired result," Mr. Glenn has failed to plead any facts that tend to show that CSX Transportation, Inc. acted deliberately or reasonably expected him to suffer severe injuries. Due to Plaintiff's inability to allege any facts that would lead one to conclude that Defendant's conduct was willful or wanton, Defendant's Motion to Dismiss with respect to Count I is GRANTED.

### III. Defendant's Motion to Dismiss Plaintiff's Claim of Abnormally Dangerous Activity

Finally, in Count III, Plaintiff argues that the Defendant is strictly liable because the starting and stopping of railroad cars is an "abnormally dangerous activity." Compl. ¶ 40. Specifically, Plaintiff contends that railroad cars are abnormally dangerous when they are moving instruments while pedestrians try to cross the railroad tracks. *Id.* ¶ 38. Defendant argues that Plaintiff does not plead any factual allegations to address the factors analyzed under the Restatement (Second) of Torts, and even if Plaintiff did so plead, those factors do not support the conclusion that operating a railroad is an "abnormally dangerous activity."

11

The Maryland Court of Appeals has recognized the doctrine of strict liability. *Gallagher v. H.V. Pierhomes, LLC*, 957 A.2d 628, 632 (Md. 2008). The Court of Appeals has adopted the general principle from the Restatement (Second) of Torts § 519, which states that "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." *Gallagher*, 957 A.2d at 634. In order to determine whether something is an "abnormally dangerous activity," this Court has to look at the factors enumerated in § 520 of the Restatement (Second) of Torts. *Gallagher*, 957 A.2d at 633. These factors include:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate the risk by the exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;
>
> (e) inappropriateness of the activity to the place where it is carried on; and
>
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520 (1977); *Gallagher*, 957 A.2d at 634.

In this case, Plaintiff has failed to allege any facts in his complaint to address the aforementioned factors. Additionally, there is no legal authority that would support a finding that the operation of a railroad is an "abnormally dangerous activity." Indeed, at least one other court has specifically held that the operation of a railroad is not such an activity. In *Warner v. Norfolk Western Ry. Co.*, 758 F. Supp. 370 (W.D. Va. 1991), a railway locomotive struck a truck driven by the plaintiff and seriously injured him. *Id.* at 371. The

court rejected the plaintiff's argument that the railroad was strictly liable and that the operation of a railroad is an "abnormally dangerous activity." *Id.* at 373. The court reasoned that "there is little, if any authority, for the plaintiffs' position that the defendant railroad company should be strictly liable…" *Id.* at 372. The court further stated that "it has been universally understood that railroad companies are to be excluded from the application of this strict-liability doctrine because the operation of a railroad is a matter of common usage." *Id.* (citations omitted).

Moreover, an analysis of the factors under § 520 reveals that Defendant's operation of a railroad is not abnormally dangerous. With respect to the first two factors, which look at the risk of harm, the drafters of the Restatement made clear that the activity must involve "a high degree of risk of serious harm to the person… and [be] sufficiently serious in its possible consequences to justify holding the defendant strictly liable for subjecting others to an unusual risk." Restatement (Second) of Torts § 520 cmt. g (1977). Here, Plaintiff has not alleged any facts to show that the risk posed by the operation of the railroad is sufficiently serious to justify a holding of strict liability.

The third factor in § 520 addresses the "inability to eliminate the risk by the exercise of reasonable care." The Defendant CSX might possibly have been able to prevent the injury suffered by the Plaintiff by taking extensive precautions. However, "[t]here is probably no activity…from which all risks of harm could not be eliminated by the taking of all conceivable precautions." Restatement (Second) of Torts § 520 cmt. h (1977). The operation of a railroad is no exception, and thus this factor is not dispositive.

With respect to common usage, the drafters of the Restatement explained that an activity is common usage "if it is customarily carried on by the great mass of mankind," and "[c]ertain activities, notwithstanding their recognizable danger, are so generally carried on as to be regarded as customary." Restatement (Second) of Torts § 520 cmt. i (1977). As explained in *Warner*, the operation of railroads is common usage, and even if there is some danger associated with moving railway cars, it is still a "customary" activity.

Next, the court looks to the appropriateness of the activity in relation to the place where it is carried on. The Maryland Court of Appeals has stated that this particular factor is the "most crucial factor." *Kirby v. Hylton*, 443 A.2d 640, 646 (Md. 1982) (citations omitted). Here, Plaintiff fails to allege that there was anything inappropriate about the operation of a railroad close to a residential neighborhood. The fact that pedestrians frequently crossed over the tracks does not make the placement of the railroad cars any less appropriate. *See also Kirby*, 443 A.2d at 646 (Md. 1982) (holding that the storage of pipe in order to improve a residential water and sewage system was neither uncommon nor inappropriate to the place where it occurred). Therefore, this "crucial" factor does not support a holding that the operation of a railroad is an "abnormally dangerous activity."

The final Restatement factor to consider in determining whether an activity is abnormally dangerous is its value to the community. Plaintiff has failed to plead any facts that would suggest that the railroad has no value to the community.

Quite simply, a review of all six factors listed in the Restatement (Second) of Torts clearly reflects that the Plaintiff has failed to allege any basis for holding that the operation of a railroad is an "abnormally dangerous activity." Moreover, it is important to note that the

Maryland Court of Appeals "limit[s] the application of [the abnormally dangerous activity] doctrine…because of the heavy burden it places upon a user of land." *Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180, 187 (Md. 1994).  Therefore, considering Plaintiff's inability to plead sufficient facts and the limited application of the abnormally dangerous doctrine, it is clear that he has failed to state a claim upon which relief can be granted.  Accordingly, Defendant's Motion to Dismiss with respect to Count III is GRANTED.

## **CONCLUSION**

For the reasons stated above, the Defendant's Motion to Dismiss (ECF No. 7) is GRANTED and this case is DISMISSED WITH PREJUDICE.

A separate Order follows.


Dated:  November 12, 2014                               /S/                       
                                                                        Richard D. Bennett
                                                                        United States District Judge